**In the United States District Court
for the District of Kansas**

---

Case No. 21-cv-02114-TC

---

KAW DRIVE, LLC,

*Plaintiff*

v.

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.,

*Defendant*

---

**MEMORANDUM AND ORDER**

Kaw Drive, LLC, asserts breach of contract and negligence claims against its insurer, State Auto Property and Casualty Insurance Co., for failing to properly compensate it for storm damage to the roofs of its commercial building. Doc. 4. State Auto moved for partial summary judgment as to the amount of damages sought. Doc. 84. For the following reasons, State Auto's motion for partial summary judgment is granted.

**I**

**A**

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over those material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly

1

contested ones—over facts that are not essential to the claims are irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, a court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record as a whole, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

## B

This is a dispute over an insurance policy for a Kansas commercial building. The insurer, State Auto, paid the actual cash value of the loss, but the insured, Kaw Drive, now seeks the total cost of replacement including increased costs, a sum that is much higher.

State Auto issued Kaw Drive a one-year insurance policy effective February 2019. Doc. 83 at ¶ 2.a.1. Among other things, the policy covered wind damage to Kaw Drive's commercial building in Bonner Springs, Kansas. *Id.* at ¶ 2.a.3. The building has west, center, and east sections. *Id.* at ¶ 3.a.

Previously, Kaw Drive had procured insurance on the same building from another company, Secura. Following a hailstorm in May 2017 that damaged the building's roofs, Kaw Drive sued Secura to recover under the policy. Doc. 83 at 3. During that litigation, Kaw Drive switched insurers from Secura to State Auto. *Id.* at 4.

In May 2019, while the State Auto policy was in effect, a severe windstorm damaged Kaw Drive's Bonner Springs building. Doc. 83 at ¶¶ 2.a.2., 2.a.4. Kaw Drive filed a claim with State Auto in June 2019. *Id.* at 4. Thereafter, a State Auto adjuster inspected the property. *Id.* The adjuster noted "limited wind damage" to the roof's center section, which could be repaired through patching. *Id.* at 9. The estimate for the damage was $65,782.40, less depreciation and the deductible. *Id.* at 4. In August 2019, State Auto paid Kaw Drive $19,474.34, the actual

cash value of damages,[1] to repair the center roof and reset displaced HVAC units. *Id.* at 10. According to State Auto, this payment also provided funds for reasonable repairs to the west roof, though it maintains that the storm did not damage the west roof. *Id.*

Kaw Drive asserted that this actual cash value amount was insufficient. Doc. 83 at ¶ 4.a.1.C. It hired a public adjuster who found that all three roof sections needed to be replaced to the tune of more than $1,800,000 (less deductible and prior payments). *Id.* at 5. State Auto hired a general adjustor, engineers, and a building consultant in October 2019 to inspect again. *Id.* at 10. State Auto argues that there was "pre-existing damage to the roofs" due to "age, exposure, poor drainage, and lack of maintenance," as well as the 2017 hailstorm. *Id.* Based on its inspections, State Auto maintained its position that the original estimate was accurate. *Id.* at 6.

The parties agree that the policy is a replacement cost value policy. Doc. 90 at 3.[2] Replacement cost is the cost to repair or replace damaged property without deduction for depreciation. Docs. 85 at 9 & 87 at 11. The pertinent provision reads as follows:

> **4. Loss Payment**
>
> **a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>
> **(1)** Pay the value of lost or damaged property;
>
> **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;
>
> **(3)** Take all or any part of the property at an agreed or appraised value; or
>
> **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

---

[1] Actual cash value is the cost to repair or replace less depreciation. Doc. 83 at 16.

[2] The parties have agreed to admit the policy for purposes of summary judgment. Doc. 83 at 2. The policy is located at Doc. 85-4.

> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any appliable provision which amends or supersedes the Valuation Condition.
>
> **b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.
>
> \* \* \*

Doc. 85-4 at 16. (emphasis original). The value of lost or damaged property is determined by the "actual cash value as of the time of loss or damage." *Id.* at 17.

Replacement cost is an optional coverage that, in certain circumstances, may replace actual cash value. Doc. 85-4 at 19. The policy, in pertinent part, describes this optional coverage as follows:

> **3. Replacement Cost**
>
> **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.
>
> \* \* \*
>
> **d.** We will not pay on a replacement cost basis for any loss or damage:
>
> **(1)** Until the lost or damaged property is actually repaired or replaced; and
>
> **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.
>
> \* \* \*

*Id.* at 19–20. (emphasis original).

Increased cost of construction is an additional coverage available under the policy. Doc. 85-4 at 10. The policy, again in pertinent part, describes increased costs coverage as follows:

**e. Increased Cost of Construction**

**(1)** This Additional Coverage applies only to buildings to which Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

\* \* \*

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

\* \* \*

*Id.* at 10–11.

Following the May 2019 storm, the roof was repaired in August 2019, February 2020, and April 2020. Docs. 85 at 6–7 & 87 at 5. These repairs totaled approximately $22,000. *Id.* The west section's roof was replaced for $156,770 in September 2021. Docs. 85 at 7 & 87 at 6. State Auto has not paid for this replacement because the damage is attributable to the prior storm. *See* Doc. 85 at 11. The roofs of the center and east sections have not yet been replaced. *See* Docs. 85 at 6–7 & 87-7.

Kaw Drive filed suit and proposes two theories for recovery. In its breach of contract claim, Kaw Drive alleges State Auto failed to properly investigate the roofs' damages and thus paid out the actual cash value to repair the roofs through patching rather than to replace the roofs, which the damage necessitated. Doc. 83 at 16. And for its negligence claim, Kaw Drive alleges State Auto breached its duty to properly investigate and evaluate its claim. *Id.* Because of State Auto's breach, Kaw Drive argues it is now entitled to replacement cost. In total it seeks $1,507,456.89, the replacement cost for all three roof sections including increased costs. *Id.* at 19. Kaw Drive also claims that, in addition to the aforementioned amount, it is entitled to $403,915 in prejudgment interest pursuant to K.S.A. § 16–201. *Id.* at 20–21.

State Auto moves for partial summary judgment on three grounds. The first two pertain to the applicable measure of recoverable damages. State Auto argues that Kaw Drive is not entitled to replacement costs for the center and east roof sections because Kaw Drive has not yet replaced them. Doc. 85 at 9 & 14. It further argues that Kaw Drive cannot recover increased costs associated with replacement because Kaw Drive has not yet replaced the center and east sections and because it replaced the west section more than two years after the loss. *Id.* at 12. State Auto's third argument is that Kaw Drive is not entitled to prejudgment interest because the amount Kaw Drive seeks is not liquidated and, in any event, State Auto did not deprive Kaw Drive of the use of its money. Docs. 85 at 13 & 90 at 9.

## II

State Auto's motion for partial summary judgment is granted. The uncontroverted evidence confirms that the center and east roof sections were not replaced, a necessary precondition to State Auto's obligation to pay replacement cost. And the west roof section was not replaced within two years of the loss, a necessary precondition to obtaining increased costs. Finally, prejudgment interest is unavailable because the amount is unliquidated and Kaw Drive was not deprived of the use of its money.

### A

Kaw Drive asserts that State Auto breached the parties' agreement when it refused to pay adequate actual cash value. Specifically, it argues that the policy implies that the actual cash value payment must be "adequate" to trigger the insured's duty to complete repairs or

6

replacements. Doc. 87 at 3. State Auto disagrees, pointing to the express provisions of the insurance agreement. Doc. 85 at 11.

Kansas law governs the parties' dispute.[3] The interpretation of insurance contracts presents a pure question of law. *See First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998); *Fed. Land Bank of Wichita v. Krug*, 856 P.2d 111, 114 (Kan. 1993). And "the primary rule in interpreting written contracts is to ascertain the intent of the parties" based on the plain, general, and common meaning of the words they used within the contract's four corners. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1186–87 (10th Cir. 2018) (applying Kansas law).

The parties' contract precludes Kaw Drive's argument that it is entitled to replacement costs. The insurance policy stipulates that State Auto will determine the value of damaged property by the actual cash value at the time of damage. Doc. 85-4 at 17. Replacement cost is an optional coverage that replaces actual cash value if, and only if, the property is "actually repaired or replaced" and "the repairs or replacement are made as soon as reasonably possible after the loss or damage." *Id.* at 20. State Auto's payment of increased costs—which the parties and the policy refer to as ordinance/law coverage—faces a similar, yet more stringent, time requirement. The policy specifies that State Auto is not obligated to pay this additional coverage until the property is "actually repaired or replaced" and "unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years." *Id.* at 11.

Kaw Drive seeks a different result by claiming that the actual cash value that State Auto paid was so low that it effectively precluded Kaw Drive from completing those repairs. Docs. 87 at 3 & 87-6 at 2–3. That argument fails: State Auto is required to pay replacement cost and increased costs if, and only if, repairs and replacement are actually completed. Doc. 85-4 at 11 & 20. Kaw Drive effectively seeks the creation of a new contract, not the interpretation of the agreement the parties struck. *But see Quenzer v. Quenzer*, 587 P.2d 880, 882 (Kan. 1978)

---

[3] The parties agree that Kansas law governs. Doc. 83 at ¶ 1.d; *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding forum state's conflict-of-laws rules apply in diversity jurisdiction cases); *Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1007 (10th Cir. 2006) ("Under Kansas choice-of-law rules, an insurance contract is governed by the law of the state where the contract was entered into.").

(recognizing a court "may not rewrite a contract or make a new contract for the parties"). Indeed, Judge Lungstrum recently rejected Kaw Drive's argument on this very issue in the litigation with its prior insurer. *Kaw Drive, LLC v. Secura Ins.*, 494 F. Supp. 3d 844, 847 (D. Kan. 2020) ("The policy does not require the insurer to fund the repair; rather, it clearly requires the insured to effect the repair before [replacement cost] benefits must be paid."); *accord Vakas v. Hartford Cas. Ins. Co.*, 361 F. App'x 1, 4 (10th Cir. 2010) ("The unambiguous terms of the contract require the insured to actually repair or replace the damaged property before he or she may collect the full replacement cost.").

The two cases that Kaw Drive offers to support its claim are inapposite. Doc. 87 at 10 (citing *Beaty v. Kan. Athletics, Inc.*, 454 F. Supp. 3d 1096, 1112 n. 14 (D. Kan. April 14, 2010), and *Nelson v. Progressive Nw. Ins. Co.*, No. 15-7454, 2016 WL 880506 at *5–6 (D. Kan. Mar. 7, 2016)). These cases support the general contract principle that one party's material breach may excuse the other's subsequent obligations. But Kaw Drive's argument—that payment of actual cash value that Kaw Drive believes is inadequate relieves it of its duty to satisfy the conditions for receiving replacement costs—is not a right the parties' contract supports. *See also Kaw Drive*, 494 F. Supp. 3d at 848.

Similarly, Kaw Drive invokes the doctrine of prevention. Kaw Drive argues that State Auto's failure to pay (what it believes is) adequate actual cash value prevented it from completing repairs and replacements. Doc. 87 at 16 (citing *Morton Bldgs., Inc. v. Dep't of Hum. Res.*, 695 P.2d 450 (Kan. Ct. App. 1985)). That doctrine denies a party profit it earned by unfairly preventing another from performing its contractual duties. *See generally Morton Bldgs.*, 695 P.2d at 452. The party claiming prevention must show that the contract prohibited the other party's conduct. *Kaw Drive*, 494 F. Supp. 3d at 848 (quoting *Morton Bldgs.*). Importantly, acts that are permitted by the contract may not be the basis for invocation of the doctrine. *Id.* Kaw Drive's claim fails because that is all State Auto is accused of doing. Doc. 83 at 16.

Kaw Drive has failed to establish the prevention doctrine applies. As Judge Lungstrum previously noted when rejecting the same argument in its prior suit, Kaw Drive could have used other funds to pay for those repairs, and there is no evidence that State Auto has done anything other than enforce the written policy. *Kaw Drive*, 494 F. Supp. 3d at 848.

**B**

State Auto also argues that it is entitled to summary judgment on Kaw Drive's request for prejudgment interest. Doc. 85 at 12–13. Kaw Drive's request is governed by K.S.A. § 16–201. *See Hofer v. Unum Life Ins. Co. of Am.*, 441 F.3d 872, 878 (10th Cir. 2006) (noting prejudgment interest in a diversity action is substantive and therefore governed by state law). In Kansas, prejudgment interest is generally recoverable unless the claim for damages is unliquidated. *Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1280 (10th Cir. 2008).

State Auto contends Kaw Drive may not recover prejudgment interest because the damages are not liquidated. Doc. 85 at 13. "A claim is liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation." *Hysten*, 530 F.3d at 1280. Damages may be liquidated when the underlying liability is disputed so long as the amount is certain. *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1010 (10th Cir. 1993). Kaw Drive's two arguments for prejudgment interest are predicated on recovering replacement costs and increased costs for all three roof sections. Doc. 87 at 16–17 (noting the amount of loss has been calculated and that State Auto has been wrongfully holding its money since August 2019). But State Auto has successfully established that Kaw Drive is not entitled to those damages. *See* Part II.A., *supra*. As a result, its claim for prejudgment interest as to those claims fails. And if Kaw Drive recovers any award after trial on any remaining claims, the propriety of prejudgment interest can be resolved at that time. *See generally Icon Structures, Inc. v. 84 Lumber Co., L.P.*, No. 19-1009, 2020 WL 4785404, at *7 (D. Kan. Aug. 18, 2020).

**III**

For the reasons set forth above, State Auto's Motion for Partial Summary Judgment, Doc. 84, is GRANTED.

It is so ordered.

Date:  October 11, 2022                   s/ Toby Crouse
                                          Toby Crouse
                                          United States District Judge

9